United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 1, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————

No. 02-30460

———————

LYNETTE ACKEL; CHARLOTTE GROSS; DEANNA DUGAN;
KAREN MYERS,

Plaintiffs-Appellants,

versus

NATIONAL COMMUNICATIONS, INC.; GARY HARDESTY;
BRUCE HAMILTON,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, CYNTHIA HOLCOMB HALL[*] and EMILIO M. GARZA, Circuit Judges.

DAVIS, Circuit Judge:

Former employees of National Communications Inc., operator of KVHP Fox 29 ("Fox 29"),

appeal the district court's summary judgment dismissal of their Title VII supervisor sexual harassment

and retaliation claims.  These claims arise out of an alleged pattern of sexual harassment by Gary

Hardesty, the employer's former President and General Manager.  Because the record at least creates

———————

[*]    Circuit Judge of the Ninth Circuit, sitting by designation.

a question of fact as to whether Hardesty was Fox 29's proxy so that his actions are imputed to the employer, we vacate the summary judgment rendered against three of the employees and affirm as to the fourth. We affirm the district court's grant of summary judgment in favor of National Communications on the plaintiffs' retaliation claims. We remand the case to the district court for further proceedings consistent with this opinion.

I

At the time of the events giving rise to this litigation, plaintiffs Lynette Ackel, Charlotte Gross, Deanna Dugan and Karen Myers were employed at the main office of Fox 29, which is located in Lake Charles, Louisiana. Fox 29 is operated by defendant National Communications, Inc. Prior to his removal, defendant Gary Hardesty was the President and General Manager of Fox 29. He also served on the corporation's board of directors and owned two percent of its stock. Defendant Bruce Hamilton was the local sales manager at Fox 29 in Lake Charles and, following Hardesty's removal, became the General Manager.

The summary judgment record indicates that Hardesty had a history of making inappropriate advances towards female employees at Fox 29 and that his tendencies were well-known to Fox 29's managers. Ken Smith, a Vice President in Fox 29's Beaumont office, testified that, prior to the events at issue here, two female employees complained that Hardesty called them asking for dates. A third complained that Hardesty forcibly kissed her without her consent. There was also testimony that Dianna Thibodeaux, the designated manager for complaints under Fox 29's sexual harassment policy, requested that all new female employees be warned about Hardesty's "flirtatious" behavior.

Lynette Ackel began working at Fox 29 in June of 1994. Ackel testified that, after being hired, she was warned by her then-supervisor, Hamilton, not to be alone with Hardesty and to report

any inappropriate behavior directly to Hamilton. Ackel also testified that, shortly thereafter, Hardesty embraced and forcibly kissed her without her consent. She complained to Hamilton with the result that a sexual harassment policy was instituted under which complaints were to be directed to the complainant's immediate supervisor or to Thibodeaux. Hardesty attributed the incident to a "misunderstanding," and no disciplinary action was taken against him. According to Ackel, Hardesty continued to subject her to unwelcome kissing, hugging and groping over the next four years. He instructed her not to tell anyone about his actions.

Although she did not report Hardesty's harassment to Thibodeaux, Ackel testified that she did respond affirmatively to inquiries from Hamilton, while he was her immediate supervisor and afterwards, as to whether Hardesty was still harassing her. She became emotional on each occasion, however, and did not provide details. Ackel testified that, at least once, Hamilton promised that he would "take care of it" but that no action was taken against Hardesty and the harassment continued. Ackel stated that she eventually stopped complaining because she felt nothing would be done. Ackel also testified that Hardesty intervened on her behalf when Hamilton threatened to fire her. After Ackel filed suit, she was reprimanded for receiving personal calls at work and for opening packages addressed to her supervisor, and she was not permitted to attend a convention that she had attended the previous year. In addition, Ackel's pay was changed from salaried to hourly, although she did not experience any decrease in overall compensation. Ackel resigned from Fox 29 in November of 1998.

Charlotte Gross began working at Fox 29 in April of 1997. She quickly became Thibodeaux's assistant, replacing Karen Myers. Shortly after moving into this position, Gross entered into a sexual relationship with Hardesty. Hardesty stated that he believed the relationship was consensual. Gross,

however, testified that she acquiesced to Hardesty's advances only after she was unable to prevent him from forcing himself on her physically. She stated that she was scared of Hardesty and of losing her job. Gross also testified that she did not report Hardesty's actions because she was ashamed, because Hardesty instructed her not to, and because she did not believe that Thibodeaux or anyone else could do anything due to Hardesty's position at Fox 29. After Gross informed Thibodeaux that she needed to leave Fox 29 in order to obtain a higher paying job, she received two raises. According to Gross, Hardesty took credit for the initial raise, although Thibodeaux testified that final approval came from Fox 29's outside accountant and that she sought the raise on her own initiative because Gross was a good employee. Thibodeaux testified that she and Hamilton suspected that Hardesty was sexually involved with Gross but took no further action when Hardesty denied it.

Although Gross was familiar with Fox 29's sexual harassment policy, she did not file a complaint until January of 1998 when National Communications' board of directors learned of her relationship with Hardesty. Hardesty was immediately barred from the office, an investigation was conducted, and his employment with Fox 29 was ultimately terminated. Gross testified that, for a brief period of time following her complaint, her telephone was removed and she was not permitted to socialize without supervision. In addition, she stated that some of her work was taken away and then gradually restored, she frequently had to unlock the door to her office with a key, she was reprimanded for various reasons, and she received a poor evaluation. According to Gross, Hamilton suggested that, if she was not happy at Fox 29, she should find another job. Gross resigned from Fox 29 in November of 1998.

Deanna Dugan began working at Fox 29 in August of 1997. Dugan testified that Hardesty frequently subjected her to unwelcome sexual advances, including attempting to pull up her skirt,

instructing her not to wear pantyhose, and twice trying to kiss her. Dugan stated that she was aware of Fox 29's sexual harassment policy but never complained to Hamilton or Thibodeaux because they were Hardesty's friends and subordinates. According to Gross, after Dugan informed her of Hardesty's actions, Gross decided to tell Hardesty that Dugan would file a complaint against him if he did not stop. Dugan testified that in November of 1997, shortly after being warned by Hamilton that her personal life was interfering with her work, Hamilton fired her for that reason in Hardesty's presence.

Karen Myers began working full-time at Fox 29 in June of 1991. After Gross replaced Myers as Thibodeaux's assistant, Myers was moved to another department. Myers repeatedly complained to Thibodeaux about the move and was informed that the changes were made because Gross was the better employee. Myers testified that she once asked Thibodeaux whether Hardesty was harassing Gross and Thibodeaux responded that she did not know. Myers was terminated in November of 1997, arguably for discussing Gross' salary with two other employees. The other employees were not discharged. Myers does not contend that she was ever sexually harassed by Hardesty.

II

We review a grant of summary judgment *de novo. Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003). "Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)). In determining whether there is a genuine issue for trial, "this court reviews the evidence in the light most favorable to the non-moving party," *Performance Autoplex II Limited. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th

Cir. 2003), and "will not weigh the evidence or evaluate the credibility of witnesses." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). "Summary judgment must be affirmed if it is sustainable on any legal ground in the record, . . . and it may be affirmed on grounds rejected or not stated by the district court." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 537-38 (5th Cir. 2003) (citation omitted).

## III

The employees brought supervisor sexual harassment claims against National Communications alleging that the corporation was liable for the conduct of its President, Hardesty.[1] The plaintiff in any Title VII sexual harassment case must, as an initial matter, establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; and (3) the harassment was based on sex. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *see also La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002) ("[I]t is important to note that judicial inquiry into the question whether a given instance of harassment constitutes sex-based discrimination is entirely separate from inquiry into whether the harasser's conduct was serious enough to constitute either *quid pro quo* or hostile environment harassment."). With the exception of Myers, it is undisputed that the plaintiffs have satisfied these preliminary requirements for summary judgment purposes.

### A.

Although Myers does not allege that she was ever harassed by Hardesty, she nevertheless contends that she should survive summary judgment on her sexual harassment claim because she was removed as Thibodeaux's assistant as a result of Hardesty's favoritism for Gross and then was

---

[1] Individuals are not liable under Title VII in either their individual or official capacities. *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002). Accordingly, the district court properly dismissed the claims against Hardesty and Hamilton.

terminated for complaining about that favoritism. As we noted in *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 656 n.6 (5th Cir. 2002), however, "courts have held that when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender." Here, any discrimination suffered by Myers with respect to her transfer was based not on her gender but instead on the fact that she happened to occupy a position in which Hardesty allegedly wished to place Gross. Similarly, the fact that Myers may have been terminated for complaining about favorable treatment received by Gross is unrelated to Myers' gender. Accordingly, Myers cannot state a claim for sexual harassment under Title VII.

B.

With regard to the remaining plaintiffs, they argue that the district court erred in granting summary judgment in favor of National Communications on the issue of vicarious liability. In holding that National Communications was not vicariously liable for Hardesty's conduct, the district court found that Hardesty was not the corporation's proxy, and National Communications successfully raised the *Faragher/Ellerth* affirmative defense to liability. In its reasons, the district court explained that, "Hardesty could not be an alter-ego of Fox 29 in any event because he owned only 2% of the stock and he answered to Lester Langley [, the corporation's outside CPA]." The issue of whether Hardesty was National Communications' proxy is central to the resolution of this case because an employer is automatically liable for its proxies' harassment of employees. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

In two opinions published the same day, the Supreme Court addressed the issue of an employer's vicarious liability and established an affirmative defense that may be raised in some hostile

-7-

environment cases. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). The Court held in these cases that:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher* at 807. The district court and National Communications ask us to read these opinions to allow an employer to raise the *Faragher/Ellerth* affirmative defense in every case not involving a tangible employment action. We decline to read the opinion so narrowly.

In *Faragher*, the Supreme Court began its discussion of vicarious liability by outlining the development of the Title VII caselaw. The Court recognized that it established the foundation of employer liability in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), when it held that Title VII does not make employers "always automatically liable for sexual harassment by their supervisors." *Faragher* at 792 (citing *Meritor* at 72). The Court went on to summarize pre-existing caselaw, and cited with approval its earlier decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), where it held a corporation vicariously liable for the harassment of its President "who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy."[2] *Id* at 789. The Court further suggested that an owner, supervisor holding

---

[2]     Like the harasser in *Harris*, Hardesty was also the President of the corporate employer at the time of the actionable conduct.

a "sufficiently high position 'in the management hierarchy,'" proprietor, partner, or corporate officer may also be treated as a corporation's proxy. *Faragher* at 789-790 (internal citations omitted). The Court made it clear that it was not abandoning the reasoning and analysis of *Harris* and these earlier cases: "The soundness of the results in these cases (and their continuing vitality) in light of basic agency principles, was confirmed by this Court's only discussion to date of employer liability, in *Meritor* . . . " *Id*. at 791. While declining to issue a definitive rule on employer liability in *Meritor*, the Court stated that Congress intended for courts to be guided by the principles of agency. *Meritor* at 72.

We read the Supreme Court's opinions in *Faragher* and *Ellerth* as the Seventh Circuit did in *Johnson v. West*, 218 F.3d 725, 730 (7t h Cir. 2000), that the employer is vicariously liable for its employees activities in two types of situations: (1) there is a tangible employment action or (2) the harassing employee is a proxy for the employer. The Seventh Circuit explained:

> In Ellerth and Faragher, the Supreme Court considered an employer's vicarious liability for the sexually harassing conduct of its supervisory staff. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." Ellerth, 524 U.S. at 765, 118 S.Ct. 2257; Faragher, 524 U.S. at 807, 118 S.Ct. 2275. Vicarious liability automatically applies when the harassing supervisor is either (1) "*indisputably within that class of an employer organization's officials who may be treated as the organization's proxy*," Faragher, 524 U.S. at 789, 118 S.Ct. 2275, or (2) "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Id. at 808, 118 S.Ct. 2275. Absent either of these situations, however, an employer may avoid vicarious liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765, 118 S.Ct. 2257.

218 F.3d 725, 730 (7th Cir. 2000) (emphasis added). The Seventh Circuit ruled that the harasser, the Chief of Police at a VA hospital, was not a proxy for the VA because "he had no less than two supervisors . . . within the hospital and no doubt others within the VA's bureaucracy. As such, he was not a high-level manager whose actions 'spoke' for the VA" *Id*. The court also pointed out that the harasser had no authority to change the terms and conditions of the employee's employment, and the employee worked for several supervisors.

Similarly, the Ninth Circuit has cited *Faragher*'s discussion of *Harris* for the proposition that "an individual sufficiently senior in the corporation must be treated as the corporation's proxy for purposes of liability," which "constitutes a bar to the successful invocation of the [*Faragher/Ellerth*] defense . . . ." *Passantino v. Johnson & Johnson Consumer Products, Inc*.212 F.3d 493 (9th Cir. 2000). Because the seniority of the harassers was unclear from the record, the Ninth Circuit remanded the case to the district court for a determination of whether the harasssers were "sufficiently senior to be considered proxies" so that the imposition of punitive damages against the corporate employer was proper. *Id*. at 517.

The Fox 29 employees present ed summary judgment evidence that at the time of the harassment, Hardesty was the President and General Manager of Fox 29 as well as a stockholder and member of the board of directors. National Communications argued that Hardesty was not the corporation's proxy, and presented evidence that Hardesty owned only 2% of the stock and consulted the corporation's outside CPA before awarding raises to employees. Stock ownership is not a prerequisite for acting as a corporation's proxy; the only factor relevant to the determination of whether Hardesty was a proxy for Fox 29 is whether he held a "sufficiently high position in the

management hierarchy" so as to speak for the corporate employer. *Faragher* at 789 (internal citation omitted). National Communications does not appear to deny that Hardesty was in charge of all aspects of the corporation's business at Fox 29, and National Communications presented no evidence showing what, if any, control its outside CPA had over the President of the company. Additionally, National Communications argues that Hardesty was not a proxy because he was removed from his position after allegations of harassment were made. Because any corporate officer may be removed by the board of direcors, this argument is meritless. The record at least creates a question of fact as to whether Hardesty was within that class of National Communications' officials who may be treated as the organization's proxy such that his actions are imputable to National Communications and the *Faragher/Ellerth* affirmative defense is unavailable. We vacate the district court's grant of summary judgment in favor of National Communications on this issue and remand this case for further consideration in accordance with this opinion.

IV.

Finally, we address the plaintiffs' retaliation claims. "The allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence supporting the causation element." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001). Where, as here, the plaintiffs seek to prove causation by circumstantial evidence, they carry the initial burden of establishing a prima facie case of retaliation. *Id.* To survive summary judgment, the plaintiffs "must make a prima facie showing: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted)). Because none of the

plaintiffs has made the required prima facie showing, we conclude that the district court properly dismissed their retaliation claims.

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green*, 284 F.3d at 657. Here, Dugan does not contend that she ever complained to anyone in Fox 29's management about Hardesty's harassment. Although Gross warned Hardesty that Dugan would file a complaint if the harassment did not stop, the record indicates that Gross was acting on her own initiative rather than at Dugan's direction. Because there is no evidence that Dugan actually engaged in a protected activity, she has not made the necessary prima facie showing.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* "Title VII does not . . . address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks*, 320 F.3d at 575 (internal quotation marks omitted). Thus, "changing locks, restructuring office procedures, clarifying job duties, and taking disciplinary actions in the form of reprimands[ ] do not constitute ultimate employment decisions." *Green*, 284 F.3d at 657-58. Because, on the record before us, none of the employment actions on which Ackel and Gross base their retaliation claims rise to the level of an "ultimate employment decision," they have also failed to make a prima facie showing of retaliation.

At the prima facie stage, "the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." *Fierros*, 274 F.3d at 191 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). Nevertheless, the plaintiff must produce

*some* evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation. *Id.* It is well established that, "in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). Although Myers contends that she was terminated for asking Thibodeaux whether Hardesty was harassing Gross, there is no indication that either Hamilton or Hardesty was aware of Myers' informal, verbal inquiry to Thibodeaux. Accordingly, she has not met her prima facie burden. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) ("A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was in part on knowledge of the employee's protected activity."); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

Based on our review of the record, the district court correctly dismissed the plaintiffs' retaliation claims.

V.

We VACATE the district court's grant of summary judgment on the issue of National Communications' vicarious liability as to Ackel, Gross and Dugan on their sexual harassment claims, and REMAND for further proceedings in accordance with this opinion. We AFFIRM the district court's summary judgment ruling in all other respects.

AFFIRMED in part;

VACATED and REMANDED in part.

EMILIO M. GARZA, Circuit Judge, specially concurring:

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998), the Supreme Court held that there is one, and only one, situation in which the affirmative defense to a Title VII supervisor sexual harassment claim is not available: when the supervisor's harassment culminates in a tangible employment action against the employee. Disregarding the sound judgment of the Supreme Court, the majority needlessly creates a second: when the harassing supervisor is the employer's proxy. Because this holding cannot be reconciled with the Court's carefully crafted scheme for analyzing this type of claim, I write separately.

It would be easy to follow the majority in accepting uncritically the Seventh Circuit's cursory reading of *Faragher* in *Johnson v. West*, 218 F.3d 725 (7th Cir. 2000), and simply hold that National Communications may not assert the affirmative defense because Gary Hardesty, as the president of National Communications, is the corporation's proxy. To be certain, Hardesty's conduct was deplorable, and National Communications was delinquent in failing to take action earlier. Nothing in *Faragher* or *Ellerth*, however, indicates that the Supreme Court intended to bar an employer from asserting the affirmative defense when the harassing supervisor happens to be of sufficiently high rank to qualify as the employer's proxy. Accordingly, we are bound, absent a tangible employment action, to apply the defense to the sexual harassment claims of plaintiffs Lynette Ackel, Charlotte Gross, and Deanna Dugan.

Because employers cannot, as a general matter, be held automatically liable for sexual

harassment by their supervisors,[3] the Supreme Court created an affirmative defense to Title VII

claims alleging supervisory sexual harassment. Specifically, in order to counter "the risk of

automatic liability," the Court decided, in most cases, to "allow an employer to show as an

affirmative defense to liability that the employer had exercised reasonable care to avoid

harassment and to eliminate it when it might occur, and that the complaining employee had failed

to act with like reasonable care to take advantage of the employer's safeguards and otherwise to

prevent harm that could have been avoided." *Faragher*, 524 U.S. at 804-05. In so doing, the

Court explicitly limited automatic vicarious liability to circumstances in which "the supervisor's

harassment culminates in a tangible employment action, such as discharge, demotion, or

undesirable reassignment." *Id.* at 808; *see Ellerth*, 524 U.S. at 765 ("No affirmative defense is

available . . . when the supervisor's harassment culminates in a tangible employment action . . .

.").[4]

The majority, however, holds that the affirmative defense is unavailable as a matter of law

because Hardesty is the proxy of National Communications. This conclusion finds no support in

*Faragher* or *Ellerth*. The majority, in relying on *Faragher*'s discussion of *Harris v. Forklift*

---

[3] *See Faragher*, 524 U.S. at 792 ("Title VII does not make employers 'always automatically liable for sexual harassment by their supervisors . . . .'") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986)); *id.* at 804 ("We are not entitled to recognize [vicarious liability for misuse of supervisory authority] under Title VII unless we can square it with *Meritor*'s holding that an employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination . . . ." (footnote omitted)).

[4] As the Court explained in *Ellerth*, an employer will always be vicariously liable when a supervisor takes a tangible employment action against a subordinate because "[t]he supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control," and "[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." 524 U.S. at 762-63.

*Systems, Inc.*, 510 U.S. 17 (1993), takes that discussion wholly out of context. That portion of

*Faragher* was only one part of a broad summary of pre-existing Title VII case law in which the

Supreme Court explained why prior decisions neglected to discuss the standards governing an

employer's liability for sexual harassment by its supervisors. *See Faragher*, 524 U.S. at 789-90.[5]

When the Court subsequently established those standards, it made no mention of proxy liability.

Indeed, the Court's twin holdings in *Faragher* and *Ellerth* speak for themselves:

> An employer is subject to vicarious liability to a victimized
> employee for an actionable hostile environment created by a
> supervisor with immediate (or successively higher) authority over
> the employee. *When no tangible employment action is taken, a
> defending employer may raise an affirmative defense to liability or
> damages, subject to proof by a preponderance of the evidence*, see
> FED. RULE CIV. PROC. 8(c). The defense comprises two necessary
> elements: (a) that the employer exercised reasonable care to prevent
> and correct promptly any sexually harassing behavior, and (b) that
> the plaintiff employee unreasonably failed to take advantage of any
> preventive or corrective opportunities provided by the employer or
> to avoid harm otherwise . . . . *No affirmative defense is available,
> however, when the supervisor's harassment culminates in a
> tangible employment action, such as discharge, demotion, or
> undesirable reassignment.*

*Faragher*, 524 U.S. at 807-08 (emphasis added); *see Ellerth*, 524 U.S. at 765 (same).

Thus, under *Faragher* and *Ellerth*, the presence or absence of a tangible employment

action is the *only* relevant factor when determining whether the affirmative defense is available.

The majority, in creating an additional bar to the defense, unjustifiably expands the scope of

---

[5] Although *Faragher* notes that the *results* in these cases remain sound "in light of basic agency principles," 514 U.S. at 791, this general statement does not, as the majority contends, implicitly create an additional exception to the affirmative defense. Nevertheless, both *Johnson*, 218 F.3d at 730, and *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 516 (9th Cir. 2000), cite this portion of *Faragher* as the sole support for their conclusion that an employer is automatically vicariously liable for sexual harassment by its proxy. Like the majority, however, neither opinion provides any legal analysis in support of this conclusion.

automatic vicarious liability in Title VII supervisory sexual harassment cases beyond the narrow parameters authorized by the Supreme Court.

Furthermore, the majority's derogation of binding Supreme Court precedent is unnecessary because, although Ackel, Gross and Dugan did not suffer a tangible employment action, National Communications has not satisfied the reasonableness standard of the affirmative defense for summary judgment purposes. In my view, the grant of summary judgment in favor of National Communications was improper because genuine issues of material fact exist as to whether National Communications exercised reasonable care in preventing and promptly correcting Hardesty's blatant harassment of its female employees. *See Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999) ("If the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice."). In addition, given the absence of any individual at Fox 29 above Hardesty or outside his chain of command, Ackel, Gross and Dugan may have acted reasonably in failing to complain promptly about Hardesty's actions. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 525-26 (5th Cir. 2001) (concluding that eight or nine month delay was not unreasonable where employee "may have believed that resort to the [employer's] administrative process was ineffectual, given [supervisor's] influence . . . .").

Accordingly, while I concur in the judgment and in Parts I, II, III.A, and IV of the majority's opinion, I cannot join the reasoning of Part III.B.