United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-30168

**RICKY JOSEPH THIBODEAUX,**

Plaintiff-Appellant-Cross-Appellee,

versus

**CLECO UTILITY GROUP, INC.; CLECO POWER LLC,**

Defendants-Appellees-Cross-Appellants,

**CLECO POWER CORPORATION,**

Cross-Appellant.

**Appeal from the United States District Court
for the Western District of Louisiana
(01-CV-2674)**

Before SMITH, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

For this appeal from a summary judgment for defendants (jointly, CLECO), the primary issue is whether material fact issues preclude the judgment against Ricky Joseph Thibodeaux's Title VII retaliation claim. A second issue, presented by CLECO's cross-appeal, concerns the district court's dismissing, without prejudice, Thibodeaux's state law claims; CLECO wants those claims decided by that court instead. Because material fact issues exist

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for the retaliation claim, summary judgment against it was improper; accordingly, this moots CLECO's cross-appeal. **VACATED and REMANDED**.

I.

The pertinent parts of the summary judgment record, viewed in the requisite light most favorable to the non-movant (Thibodeaux), follow. Thibodeaux, a white male hired by CLECO in 1973, supervised meter readers, including appointing lead meter readers when a vacancy occurred. These positions were historically not posted to invite applications; Thibodeaux had never known one to be posted. In 1999, a lead meter reader position became available; Thibodeaux intended to appoint either of two employees; each was white.

Thibodeaux became aware that a black meter reader whom Thibodeaux supervised, Gant, met with a black CLECO vice president, Hall. After becoming aware of this meeting, Thibodeaux was called to meet with his supervisor, Bunting.

Bunting informed Thibodeaux that Hall had instructed Bunting and a human resources manager, Barnes, to interview the employees Thibodeaux supervised. Upon Thibodeaux's expressing his confusion to Bunting, he replied: "we're just very concerned about a racial/black lawsuit"; "[a] black employee raised the issues, and we're scared of a lawsuit". Upon Thibodeaux's asking what issues Gant had raised with Hall, Bunting declined to tell Thibodeaux.

2

Later, Bunting and Barnes instructed Thibodeaux to post the position in order to permit applications. When Thibodeaux asked why his authority to appoint was being taken away, Bunting and Barnes responded: "that's the way it was gonna [*sic*] be". (Thibodeaux was told that the position was being posted because Gant was black and because Gant might sue, but he has not presented evidence of *when* he was told this.) Thibodeaux objected to posting the position because he believed Gant was receiving privileges because of his race, which would adversely affect non-minority employees. Nevertheless, Thibodeaux complied.

The vacancy posting included a deadline for receipt of applications; CLECO had a written policy that there would be *no* exceptions for missing an application deadline. Gant's application did not meet the deadline, and Thibodeaux informed Barnes of that. Nevertheless, Barnes instructed Thibodeaux to accept the application. When Thibodeaux inquired why, Barnes replied: "you are to do it".

When Thibodeaux spoke to Bunting about being required to accept the application, Bunting said the situation could be "touchy" and could "come back and bite" Thibodeaux. Thibodeaux again objected because he believed Gant was receiving preferential treatment because of his race, but Thibodeaux again complied. (At an unknown point in time, Thibodeaux was told the reason for accepting Gant's late application was that he was black.)

3

Thibodeaux evaluated Gant and the other applicant (white). After his doing so, the intended white appointee outscored Gant. Thibodeaux was instructed by Bunting to revise Gant's evaluation to make it less critical. Thibodeaux protested because he thought his evaluation was accurate. Bunting said, *for the first time*, that Gant would *not* get the job, but that his evaluation should be improved to make him look better.

After submitting a revised evaluation, which provided less critical narrative evaluation but gave Gant the same numerical score as the first evaluation, Thibodeaux was instructed by Bunting to revise the evaluation again. He was instructed to increase Gant's score. Thibodeaux objected because he had "looked at it objectively" and made a "judgment call" but did make the revision.

Thibodeaux was told a third time to change the evaluation; he was told that Gant's score must be further increased. Thibodeaux refused because to further alter the evaluation would falsify it. Thibodeaux was told that the reason for the re-evalutions was because Gant was black and CLECO "was gonna [*sic*] get sued".

After Thibodeaux refused to perform this requested — fourth — evaluation, Bunting performed it. He interviewed Gant and the white employee. Bunting's evaluation gave each applicant higher scores than Thibodeaux had given them. Nevertheless, on Bunting's evaluation, the white employee still outscored Gant and was given the job.

4

Thibodeaux was suspended and offered a choice of either immediate termination or demotion with a 50 percent pay cut. He chose the demotion; but, after several months in the new position, he resigned. According to Barnes, the actions taken against Thibodeaux were because of his handling of the *entire* situation with Gant.

Thibodeaux sued under federal and state law, presenting, *inter alia*, a Title VII retaliation claim premised on his objecting to unlawful racial discrimination. 42 U.S.C. § 2000e-3(a). (Concerning Title VII, he also claimed racial discrimination but does not appeal the summary judgment against that claim.)

On CLECO's motion for summary judgment, the district court applied the well-established three-step burden shifting test (whether: *prima facie* case; justification; pretext). Concerning the Title VII retaliation claim, it held: Thibodeaux had failed to establish a *prima facie* case; in the alternative, he had failed to create a material fact issue that CLECO's claimed justification for his demotion — insubordination — was a pretext for retaliation. Among other things, the court dismissed, without prejudice, Thibodeaux's state law discrimination and retaliation claims. (As discussed *supra*, vacating the judgment moots CLECO's cross-appeal about those claims.)

5

II.

A summary judgment is reviewed *de novo*; it is proper only if, *inter alia*, there is no material fact issue.  FED. R. CIV. P. 56(c); *e.g., **Ackel v. National Communications, Inc.***, 339 F.3d 376, 381 (5th Cir. 2003).  As stated, for that review, we view the evidence, and draw all inferences, in the light most favorable to the non-movant (Thibodeaux).  ***Ackel***, 339 F.3d at 381.  Pursuant to our *de novo* review, material fact issues exist on:  whether Thibodeaux presented a *prima facie* case; and whether CLECO's justification for the demotion was a pretext.  Hence, summary judgment was improper on that claim.

A.

To establish a *prima facie* case for Title VII retaliation, Thibodeaux must show:  he engaged in activity protected by Title VII; an adverse employment action occurred; and there is a causal link between the adverse action and the protected activity.  *E.g., **Long v. Eastfield College***, 88 F.3d 300, 304 (5th Cir. 1996). Obviously, the second and third factors are satisfied:  the demotion was an adverse employment action; and there was a causal link between *all* of Thibodeaux's actions with respect to the lead meter reader position and the demotion.  (Barnes stated in her deposition that the "whole situation" of Gant's application led to Thibodeaux's demotion:  posting, accepting, and evaluating.)

6

Concerning the disputed protected activity factor, Thibodeaux was so engaged *if* he opposed actions he reasonably believed to be violative of anti-discrimination statutes. *E.g., **id***. Thibodeaux believed Gant was receiving preferential treatment, because of his race, in two respects: the position's being posted; and his application's being accepted.

Viewing the summary judgment record in the requisite light most favorable to Thibodeaux, he could reasonably have believed that his protests were in opposition to unlawful discrimination. He was aware that Gant had spoken with a black CLECO officer, who then initiated an investigation into Thibodeaux's team by Bunting and Barnes; Bunting directed Thibodeaux to post a position that had never, to Thibodeaux's knowledge, been posted previously; and, when Gant failed to apply on time, Barnes ordered Thibodeaux to accept his application, despite a written company policy to the contrary. In sum, there is a genuine issue of material fact whether, *prior* to being told that Gant would *not* get the job, Thibodeaux reasonably believed that he was opposing unlawful actions.

## B.

For pretext *vel non*, at issue is whether Thibodeaux created a material fact issue for CLECO's proffered non-retaliatory justification for Thibodeaux's demotion — insubordination. According to Bunting, his instructions to Thibodeaux were issued out of concern that a disparity between the low rating given by

7

Thibodeaux and Gant's clean personnel file raised the possibility that Gant would file a workplace discrimination action or that CLECO's own review board would reject Thibodeaux's decision. Bunting's affidavit provides: Thibodeaux was insubordinate "in refusing to comply with my direct order to redo ... Gant's evaluation to properly reflect his competencies as reflected in his personnel file"; and this insubordination led to the demotion.

As reflected by the foregoing discussion of the summary judgment record, material fact issues exist for whether that justification for the adverse employment action was pretext. In addition, regarding Bunting's claimed concern about Thibodeaux's evaluation creating a disparity with Gant's personnel file, Thibodeaux stated: CLECO had a policy that personnel files were not to have negative materials placed in them; any negative materials in the personnel files were to be expunged; Bunting was aware of this policy; and Barnes had investigated a complaint against Gant.

III.

For the foregoing reasons, the judgment is **VACATED** and this action is **REMANDED** to district court for further proceedings.

*VACATED and REMANDED*