# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2022

Lyle W. Cayce
Clerk

No. 22-30285

Dirk N. Paulin,

*Plaintiff—Appellant*,

*versus*

Alejandro Mayorkas, *Secretary, U.S. Department of Homeland Security*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-14748

Before Dennis, Elrod, and Ho, *Circuit Judges*.

Per Curiam:[*]

In this Title VII retaliation case, Plaintiff Dirk N. Paulin appeals the grant of summary judgment for Defendant, arguing the district court abused its discretion in allowing Defendant to file successive summary judgment motions and erred in finding he could not prove his prima facie case. We disagree and accordingly affirm.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30285

## I.

From 2006 to 2019, Dirk Paulin worked in the Federal Emergency Management Agency's (FEMA) Louisiana office in New Orleans. His supervisor was Eddie Williams, the Infrastructure Branch Director for the office. Paulin filed equal employment opportunity complaints in 2009, 2012, and 2013, and Williams admits he was aware of these complaints. Paulin litigated his 2013 complaint through June 2017, when the parties reached a settlement.

FEMA employees like Paulin hold two job titles. One is their hired-in job title, which determines their grade and pay scales. The other is part of FEMA's Qualification System (FQS), an internal system the agency uses to classify its employees. The FQS title determines "the type of work, deployments, and supervisory responsibilities [employees] are assigned on a daily basis." To be promoted, employees complete a "task book" to qualify to a new FQS position. Employees are considered qualified in their FQS position when they complete a task book that corresponds with that position. A task book consists of pre-defined training, job tasks, and experiences that must be completed for the employee to advance to the next FQS position and be eligible for more complex and supervisory deployments. An employee is promoted upon completion of the relevant task book. Once an employee becomes qualified for a position after completing the relevant task book, the employee can then receive a new task book that corresponds with the next most senior FQS position and can become a candidate or trainee for that position.

FEMA restructured FQS in 2017 to unify employees' hired-in title and FQS title. Each employee received a new FQS title. As part of the restructuring, FEMA management directed Williams to assign new task books and titles to employees under his supervision, including Paulin.

No. 22-30285

Prior to the restructuring, Paulin was qualified for the position of Public Assistance Coordinator Lead (PAC Lead). And he had an open task book for the position of Public Assistance Task Force Leader (TFL). As a qualified PAC Lead, Paulin had project specialists reporting to him, and he reported to TFLs. In the restructuring, FEMA eliminated the intermediary PAC position and instead created the Program Delivery Manager (PDMG), which reports directly to TLFs. Under the new model, Williams assigned Paulin to the PDMG position as a trainee and opened a PDMG task book instead of a TFL task book.

Paulin believes this reassignment "constructively demoted" him to a "non-supervisory position in which he could not even deploy or train in the supervisory Task Force Leader position." Paulin also claims Williams retaliated against him for his prior equal employment opportunity complaints by not selecting him to deploy to Houston, Texas to assist with recovery efforts after Hurricane Harvey. Paulin concedes that his FQS title rendered him ineligible for that deployment, but argues he would have been eligible if Williams had not failed to open a TFL task book under the new model.

In November 2017, Paulin filed an equal employment opportunity complaint alleging that Williams retaliated against him by demoting him and discriminated against him based on sex when Williams selected two women to deploy to the Hurricane Harvey recovery efforts instead of him. FEMA opened an investigation into the claims. The following August, FEMA concluded the investigation and a month later the Department of Homeland Security's Office for Civil Rights and Civil Liberties dismissed Paulin's complaint. This complaint forms the basis for the instant case, which Paulin

No. 22-30285

filed in district court in December 2019.[1]  After two years of litigation, the district court granted summary judgment for Defendant.

Paulin was "finally able to voluntarily transfer" from the Louisiana office to FEMA's national headquarters in 2019.  Paulin maintains that his "demoted PDMG title has had a cascading effect on his career advancement at FEMA."  Defendant notes that, since transferring to headquarters and filing his lawsuit in district court, Paulin filed another complaint against six of his new supervisors also alleging retaliation.

## II.

Paulin now presents two main arguments for why the district court should be reversed.  He first argues that the district court abused its discretion by allowing Defendant to file successive motions for summary judgment after altering the scheduling order due to COVID-19.  He then argues the district court misinterpreted the evidence, law, and summary judgment standard when it held he could not prove his prima facie case. Upon our review of the record and law, we identify no reversible error in the district court's order.

## A.

The district court granted Defendant's request to file successive motions for summary judgment over Paulin's objections.  Paulin now argues the district court abused its discretion by permitting Defendant to file motions for summary judgment after the initial dispositive motion deadline had passed.  He perfunctorily argues that permitting Defendant to file a "very late" summary judgment motion because of COVID-19 "was highly prejudicial to Paulin."

---

[1] Paulin dropped the sex discrimination claim from his district court complaint.

We review district court decisions to extend scheduling order deadlines for abuse of discretion. *See Springboards to Educ., Inc. v. Houston Indep. School Dist.*, 912 F.3d 805, 819 (5th Cir. 2019). *See also Squyres v. Heico Cos., LLC*, 782 F.3d 224, 236–37 (5th Cir. 2015).

It is well settled that district courts have broad discretion in controlling their own dockets. *Edwards v. Cass Cnty., Tex.*, 919 F.3d 273, 275 (5th Cir. 1990). And Rule 6(b) grants district courts "broad discretion to expand filing deadlines." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). Paulin does not even attempt to argue any of the four factors relevant to determining whether there was good cause for the district court to modify the scheduling order. *See Springboards*, 912 F.3d at 819. Accordingly, we hold the district court did not abuse its discretion by allowing Defendant to file successive motions for summary judgment in light of the amended scheduling order resulting from COVID-19 delays.

**B.**

Paulin argues the district court erred in granting summary judgment by positing various attacks on the district court's analysis. None succeed.

We review a district court's ruling on a summary judgment motion de novo. *Correa v. Fischer*, 982 F.2d 931, 932 (5th Cir. 1993). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Title VII makes it unlawful for an employer to retaliate against an employee who "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, [Paulin] must establish that: (1) he participated in an activity

protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). The district court found that Paulin failed to provide sufficient evidence to establish the causal connection element.

"At the prima facie stage, the standard for satisfying the causation element is much less stringent than a 'but for' causation standard." *Ackel v. Nat'l Commc'n, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted). But Paulin "must produce *some* evidence of a causal link between the protected activity and the adverse employment action." *Id.* There are two ways to establish causation.

One, a plaintiff may satisfy the causation element by relying on the "close timing between an employee's protected activity and an adverse action against him." *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) (citation and alterations omitted). In cases where causation is established through "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," the "temporal proximity must be very close." *Clark Cnty. Sch. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (internal quotation marks omitted). The examination of the "temporal relationship between the employee's conduct" and the adverse employment action is "highly fact specific." *Nowlin v. Resolution Tr. Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).

Two, absent a sufficiently close temporal proximity, a plaintiff can establish causation if he presents "other evidence of retaliation." *Feist*, 730 F.3d at 454. "Such evidence may include an employment record that does not support [the adverse employment action], or an employer's departure from typical policies and procedures." *Id.* at 454–55.

In this case, Paulin attempts to establish the causation element by arguing that because he litigated his complaint through settlement in June 2017—several months after the restructuring—there was sufficient temporal proximity between his protected activity and his constructive demotion. But there are two problems with this theory: First, we do not presume causation from temporal proximity to long-pending matters. Second, the evidence Paulin proffers does not establish Williams knew about the settlement.

The Fifth Circuit has previously recognized that "there is nothing inherently 'suspicious' about [an employment action] that occurs at least several years after protected activity begins" even if the protected activity is—as here—on-going. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) (holding there is no causation where an employee was suspended for 13 days after regularly bringing equal employment opportunity charges from the mid-1980s to 1992). Indeed, in such cases, "one might argue that the 'timing' . . . is evidence *against* retaliation." *Id. See also Clark Cnty. Sch. Dist.*, 532 U.S. at 273 ("[I]f one presumes [the employer] knew about [the right-to-sue letter], one must also presume that she (or her predecessor) knew *almost two years earlier* about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed. . . . Action taken (as here) 20 months later suggests, by itself, no causality at all."). That is especially true when there is an intervening positive employment action between the protected activity and the alleged retaliation. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) ("The seven-year time lapse between [the plaintiff's] claim and his 1996 layoff, and the intervening positive evaluation by [his supervisor], undermine any causal connection between those two events."). And here there is evidence that Williams allowed Paulin to serve in an acting supervisory position in 2015.

And in any event, though it is undisputed that Williams knew of the complaints, Paulin failed to present evidence Williams was aware of the then-forthcoming settlement.

Paulin tried to proffer untimely-produced emails regarding the settlement agreement to establish temporal proximity.  The district court, however, disregarded these emails under Federal Rule of Civil Procedure 37 because they were not timely produced even though they fell squarely within the scope of Defendant's discovery requests.  As the district court correctly noted, "[i]f a party fails to provide information or identify a witness as required by [Rule 26], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Simply put, Paulin cannot rely on evidence he inappropriately failed to provide to Defendant to establish causation—an essential element of his claim. *Cf. CQ, Inc. v. TXU Min. Co., LP*, 565 F.3d 268, 280 (5th Cir. 2009) (noting that at an "advanced stage of the litigation" like summary judgment, "permitting . . . new evidence would not have been harmless").

The evidence in this case does not permit us to infer causation from mere temporal proximity. The evidence before the district court at summary judgment suggests that Williams knew of Paulin's complaints for years and not only did not retaliate despite being Paulin's supervisor the entire time, but actually provided Paulin positive employment opportunities.

Nor is there other sufficient evidence of retaliation.  Paulin attempts to argue that there was sufficient evidence before the district court to find causation absent temporal proximity.  But his evidence is little more than his own interpretation of how the FQS system should work and his contention that he believes he should have received a higher title after the restructuring. He also points to *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992),

a case where this circuit held there was causation despite the 14-month gap between the protected activity and the alleged retaliation because there was other evidence of retaliatory motive. In that case, there was evidence that the supervisor consistently harassed the employee over her equal employment opportunity complaint during its pendency and that—after nine years without any issues—her employer complained of problems with her work after she filed the complaint. *Id.* Here there was no such evidence. Paulin just assumed (rather than provided evidence) that Williams had a retaliatory motive for his reclassification, even though there was deposition testimony from Williams explaining his process for reclassifying Paulin and other employees as well as testimony from another supervisor corroborating Williams's explanation. And although Paulin provided deposition testimony from a prior supervisor—one that had not supervised Paulin since 2009 and was not involved in restructuring assignment decisions—who believed Paulin could have been given a higher position, that evidence did not create any dispute as to whether Williams properly exercised his discretion in assigning Paulin. That testimony merely represented a difference in opinion and does not support an inference of retaliation. *Cf. Vance v. N. Panola Sch. Dist.*, 189 F.3d 470, 470 (5th Cir. 1999) (per curium) (unpublished) (noting that an affidavit speculating about the reason the plaintiff was fired from someone "not involved in the decision" "simply has no bearing on the plaintiff's termination").

Paulin next attacks the summary judgment order by arguing the district court erred in failing to consider two of his arguments. Not so.

First, he claims the district court improperly discounted his argument that Williams had no legitimate non-discriminatory reason for closing Paulin's prior TLF task book. Second, he claims that the district court erred in failing to consider two comparators he proffered. But Paulin did not adequately present either argument before the district court. And so,

both arguments are forfeited on appeal.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[A] federal appellate court does not consider an issue not passed upon below.").

In his reply brief, Paulin points to various portions of the record he says show he thoroughly presented these arguments to the district court. Having reviewed these citations, we disagree.  It is true that Paulin occasionally refers to the closure of his prior task book when discussing the facts of the case, but he did not explicitly argue the closure showed Williams lacked a legitimate non-discriminatory reason for assigning Paulin as he did. Similarly, it is true that in his response to the motion for summary judgment Paulin mentions—for the first time—two employees he believes were treated more favorably than him.  But to argue that these individuals are comparators, Paulin would have needed to argue that they were similarly situated to him—something he did not do at the district court.  *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 261 (5th Cir. 2009) (noting that, when trying to establish a prima facie case by pointing to comparators, the plaintiff bears an "initial burden" to show "he had been treated disparately from any other *similarly situated*" employee).  For an argument to be preserved for appeal, it "must be raised to such a degree that the trial court may rule on it," something that did not happen here. *Ray v. Comm'r of Internal Revenue*, 13 F.4th 467, 476 (5th Cir. 2021) (quotation omitted).  *See also Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993) ("[T]o be preserved, an argument must be pressed, and not merely intimated.") (quotation omitted).

\* \* \*

Having identified no reversible error in the district court's grant of summary judgment, we affirm.