**REVISED December 14, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 14-51320

———

United States Court of Appeals
Fifth Circuit

**FILED**
December 10, 2015

Lyle W. Cayce
Clerk

MARGIE BRANDON,

Plaintiff - Appellant

v.

THE SAGE CORPORATION,

Defendant - Appellee

———

Appeal from the United States District Court
for the Western District of Texas

———

Before JONES, SMITH, and SOUTHWICK Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Margie Brandon ("Brandon") filed suit against the Sage Corporation ("Sage"), alleging racial discrimination, wrongful termination, and retaliation, in violation of Title VII as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-3(a) ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") and the comparable Texas Commission on Human Rights Act, and other state law claims. The district court granted Sage's motion for summary judgment. Brandon appeals the dismissal of her retaliation claims. We affirm, because Brandon, who was a supervisor familiar with company employment policies,

No. 14-51320

has not created a genuine material fact issue that she suffered an adverse employment action.

## BACKGROUND

Sage owns and operates truck driving schools, including a San Antonio campus. Brandon was the Director of the San Antonio Campus. Barbara Blake ("Blake") was Brandon's immediate supervisor, but Blake and Brandon reported to Gregg Aversa ("Aversa"), Sage's President. Carmella Campanian ("Campanian"), was Sage's National Project Director, Regional Director for the Western United States, and School Director for the Billings, Montana site. In 2010, Brandon interviewed and hired Loretta Eure ("Eure"), a truck driver who alleges that her "gender expression was traditionally masculine."

Also in 2010, one of the accounts that Campanian managed, Sanjel, Inc., expanded its contract with Sage. On March 29th, 2011, Campanian flew to San Antonio, Texas, and spent three days implementing the driver training component of the Sanjel expansion. When Campanian arrived at Sage's campus, she saw Eure through a window and asked, "What is that and who hired that?" Brandon responded that Eure was a qualified instructor. *Id.* Campanian then explained that Sage did not hire "cross-gender" people and that Brandon would be disciplined for hiring Eure. Brandon replied "Excuse me?" Campanian answered by repeating that Sage did not hire "cross-genders."

Campanian also reduced Eure's work hours and excluded Eure from the Sanjel project. When Brandon questioned her decision, Campanian asked Brandon if she was stupid and added that the Sanjel people would eat Eure alive. Campanian also told Brandon that Sage was her company, that she was a partner, and that the Sanjel account was for her to do with as she pleased. Ultimately, Campanian informed Brandon that her pay would be reduced by 50 percent because she hired Eure.

2

No. 14-51320

Campanian's overbearing and offensive conduct led Brandon and Blake to call Aversa. Aversa, however, was traveling at the time. Brandon did not wait to hear back from Aversa. On March 31st, Brandon sent a "resignation" email alleging that she felt threatened by Campanian's pay cut statement. Brandon ended the email by stating that she was leaving Sage because she could no longer take the abuse and humiliation from Campanian. Eure also resigned.

When Aversa returned on April 1st, he apologized for Campanian's behavior and communicated that Campanian had no authority to cut Brandon's pay or reduce Eure's hours.

Brandon filed an administrative complaint with the Equal Employment Opportunity Commission (the "EEOC"), which found reasonable cause that discrimination and retaliation had occurred. In addition to filing an EEOC complaint, Brandon sued Sage.[1] The district court granted summary judgment for Sage on all claims. On the retaliation claim, the district court found that the threat to cut Brandon's pay was not an adverse employment action.

Brandon timely appeals her retaliation claim. Brandon asserts that the district court erred in finding that Campanian's pay cut threat was not an adverse employment action.

---

[1] Eure also filed an EEOC compliant and a lawsuit against Sage. In her lawsuit, Eure brought claims of sex-based discrimination under Title VII and the Texas Commission of Human Rights Act, wrongful termination and retaliation under Title VII and § 1981, and negligent hiring, supervision, training, and retention, under Texas law. The district court dismissed all of Eure's claims at the summary judgment stage. Eure timely appealed her sex-based discrimination claim. Her appeal was voluntarily dismissed in September 2015. *See Eure v. Sage Corp.*, No. 14-51311, Dkt. 83 (5th Cir. 2015).

No. 14-51320

**DISCUSSION**

This court reviews appeals of summary judgment *de novo*, applying the same standard as the district court. *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir.2000)).

"When considering summary judgment evidence, we view all facts, and the inferences to be drawn from them, in the light most favorable to the nonmovant." *DIRECTV, INC. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Bayle*, 615 F.3d at 355. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). He "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

The court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex*, 322 F.3d at 853.

4

No. 14-51320

To prevail on her retaliation claims, Brandon must first establish a *prima facie* case. "There are three elements to a *prima facie* case of retaliation []: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Whether an employer's actions are retaliatory often presents a jury question. *See Burlington N.*, 548 U.S. at 71–73. "The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

Concerning the first element, Title VII's "opposition clause" protects employees who "oppose any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). The plaintiff need not have been the target of the alleged discrimination: "employee opposition to discriminatory employment practices directed against a fellow employee may constitute activity protected under" the opposition clause. *Jones v. Flagship Int'l*, 793 F.2d 714, 727 (5th Cir. 1986). Whether the plaintiff was mistaken about the alleged discrimination is not fatal to the claim. *Id.* (citing *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir.1980)).

In regard to the second element, to establish an adverse employment action at the *prima facie* stage, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (quotation marks omitted).

Finally, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor]

5

No. 14-51320

causation test[.]" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Brandon's case in the district court hinged on the second element of her *prima facie* case—whether an adverse action occurred. Therefore, we will assume *arguendo* that Brandon meets the first[2] and third elements and turn to the second element, as the district court did.

I.

Though the record does not support that Brandon felt threatened[3] by Campanian's statement, the applicable test is whether a *reasonable* employee would have been dissuaded from supporting a discrimination charge as a result of Campanian's threat. *See Burlington N.*, 548 U.S. at 68. The reasonable employee is the average person in similarly situated circumstances. *See Long v. Eastfield Coll.*, 88 F.3d 300, 310 (5th Cir. 1996) (DeMoss, J., concurring in part and dissenting in part).

Brandon asserts that the district court erred by characterizing the alleged 50 percent pay cut as a mere threat and by concluding that a threat alone can never constitute an adverse employment action. Brandon also contends that the district court improperly relied on the stricter "ultimate employment decision" test applicable to Title VII discrimination claims, when it should have used the more expansive "might well be dissuaded" *Burlington Northern* test applicable to retaliation claims. In response, Sage argues that no adverse action occurred because, as the district court held, a salary reduction threat is not a materially adverse employment action.

---

[2] Title VII in plain terms does not cover "sexual orientation." We do not opine here whether Brandon correctly surmised that Eure may claim some protection under Title VII.

[3] *See infra* Section II; *see also* Brandon's deposition (stating that she did not believe that Campanian could legally cut her salary for hiring a transgender individual).

No. 14-51320

We do not reject the possibility that a realistic, drastic pay cut threat might deter someone from supporting a discrimination charge in certain circumstances,[4] but no reasonable jury would find that to be the case here. Brandon was the Director of the San Antonio school and did not report to Campanian, but to the company's President. A reasonable employee in Brandon's position would have been familiar with the company's chain of command, the company's grievance process, and who had the last word on final tangible employment decisions. Therefore, a reasonable high placed employee would not have been dissuaded from engaging in protected activity as a result of threats or actions by someone outside her chain of command and who she knew had no final decision-making authority.

At the very least, rather than giving immediate credence to Campanian's comments, a reasonable fellow supervisory employee would have waited to receive confirmation on whether the threat was official or would have followed the company's grievance process. Because we conclude that a reasonable employee in a supervisory position would not have been dissuaded by Campanian's statements, no adverse employment action occurred.[5]

---

[4] *See Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003); *see also  Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 148 (2d Cir. 2014) (employer's "threats of false report charges . . . would often—even usually—be a deterrent to reasonable employees making or supporting discrimination claims"); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2012) ("A reasonable juror could find both that [plaintiff's supervisor] threatened [plaintiff] with the loss of his job, and that this threat would dissuade a reasonable worker from making or supporting a charge of discrimination.") (internal quotation marks omitted).

[5] According to Brandon, the district court conceded that Brandon reasonably believed that Campanian could cut Brandon's pay. Brandon's assertion is a mischaracterization of the record. First, the Court's statement was made at the summary judgment hearing and it concerned Brandon's constructive discharge claim, not her retaliation claim. Second, the court's statement was predicated on the assumption that Brandon's version of the facts was true, as opposed to stating a finding of fact. Interestingly, the district court dismissed Brandon's constructive discharge claim because she failed to act reasonably by immediately quitting rather than pursuing her inquiry to Aversa. *See Aryain v. Wal-Mart Stores Tex. LP*,

No. 14-51320

Consequently, Brandon fails to create a fact issue as to the second element of her *prima facie* case—a failure fatal to her claim. Summary judgment on Brandon's claim was also justified for the independent reasons discussed below.

## II.

Brandon alternatively argues that the pay cut was not a threat, but a fact.[6] Brandon urges the court to focus on the sequence of events and Campanian's alleged comments and threats. Brandon points out that Campanian told her that "we'll deal with you seriously" for hiring Eure. Then, Campanian allegedly explained that she wanted to speak with Aversa and that she would let Brandon know in a few minutes what her punishment would be. Campanian next made some phone calls and informed Brandon that "my decision -- our decision is to . . . cut your pay in half." *Id.* Therefore, Brandon asserts that Campanian was not threatening Brandon, but instead informing her that the pay cut was a "done deal."

Brandon has not provided specific evidence suggesting that a decision to reduce her salary was ever made. According to Brandon's testimony, Campanian's pay cut threat was always conditioned on Aversa's authorization—an authorization that was never given. Brandon recalled Campanian saying: "I haven't made the decision yet. I have to talk with

534 F.3d 473, 481–82 (5th Cir. 2008) ("In the constructive discharge context, we have recognized that 'part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" (citing *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987)).

[6] Brandon's retaliation claim on appeal is also based on her alleged exclusion from the Sanjel project. There is evidence suggesting that an additional director could be assigned to support the Sanjel project in San Antonio. There is, however, no evidence that Brandon would be excluded. Therefore, Brandon's retaliation claim cannot advance based on her alleged exclusion from the Sanjel project.

No. 14-51320

Mr. Aversa. He's still traveling and I can't get a hold of him. . . . I'm still going to talk about this further with Mr. Aversa." And as the district court noted, there is no evidence that the aforementioned discussion ever occurred, only that Brandon assumed it did.

Brandon also knew that Aversa had the final say at Sage because he had told her to come directly to him if she encountered any issues that made her want to leave Sage. In fact, after Campanian's comments about her salary, Brandon called Aversa. And as soon as Aversa returned to his office, he condemned Campanian's conduct.

Moreover, in a letter written by Brandon, she stated that the pay cut idea was something that Campanian was going to *suggest* to Aversa. And in her hasty resignation email, Brandon never mentioned Campanian's pay cut threat as a reason for resigning. The reason she actually provided for leaving was that she could not continue to take more abuse and humiliation from Campanian. *Id.* at 619. Brandon confirmed this reason later in her deposition. *Id.* at 518. The record does not create a genuine material fact issue as to whether the salary reduction decision was ever finalized.[7] Accordingly, Brandon fails to support this theory concerning the adverse employment action element of her *prima facie* case.

## III.

Brandon also contends that as one of Sage's founding partners, stock owners, and Vice President, Campanian was a proxy for Sage and her actions

---

[7] *See Williams v. Lovchik*, 830 F. Supp. 2d 604, 617 (S.D. Ind. 2011) ('[B]ecause the proposed salary decrease never came to fruition, it cannot constitute an adverse employment action'); *Brock v. Positive Changes Hypnosis, LLC*, 589 F. Supp. 2d 974, 983 (W.D. Tenn. 2008) (finding that threats to alter the terms of plaintiff's compensation were not materially adverse employment actions in the FLSA retaliation context because they were never carried out); *see also Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (finding that proposals to reduce pay were not materially adverse employment actions in the ADEA context because they were never implemented).

are attributable to Sage.  Brandon additionally argues that Sage is liable under common law agency principles.  In response, Sage avers that it is not liable for Campanian's conduct because she did not have the authority to hire, fire, or alter Brandon's employment conditions.  The law favors Sage on the facts before us.

First, Brandon's proxy liability argument is unpersuasive.  The "proxy" term derives from an interpretation of the Supreme Court's discussion of vicarious liability for sexual harassment in *Ellerth* and *Faragher*, which this court adopted from the Seventh Circuit.  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 383 (5th Cir. 2003) (adopting the interpretation of *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct.  2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998) in *Johnson v. West*, 218 F.3d 725 (7th Cir. 2000)).  In *Ackel*, this court held that the actions of a proxy are attributable to the employer.  *Ackel*, 339 F.3d at 383.  A proxy may include owners, proprietors, corporate officers, and others occupying a sufficiently high management position that their actions speak for the company.  *Id.* at 383–84 (citation omitted).

*Ackel*, however, is distinguishable from the present case.  In *Ackel*, the malfeasor was the president and general manager of the corporation.  *Id.* at 384.  Significantly, the defendant in *Ackel* did not deny that the company's President was in charge of all the aspects of the company.  *Id.*  This court accordingly held that the president was in a sufficiently high position that his sexual harassment was directly actionable the employer.  Here, on the other hand, the record evidence indicates that Campanian did not speak for the company or have control over employee compensation, benefits, or primary responsibilities.

As additional support for her proxy liability argument, Brandon proffers Campanian's rogue conduct on a particular day when she reduced Eure's work

hours and Campanian's bragging about her position in the company. But these facts do not support Campanian's authority to speak for Sage in regard to Brandon. Brandon's claim does not survive summary judgment. *See Piazza's Seafood World,* 448 F.3d at 752.

Neither is Sage liable under basic agency principles. Title VII defines "employer" to include "any agent" of the defendant company. 42 U.S.C. § 2000e(b). In *Long,* a Title VII retaliation case, this court held that an employer is liable "for an employment decision made by supervisory employees, where the supervisory employees were agents of the employer with regard to the employment status of the plaintiff." *Long,* 88 F.3d at 307–08; *see also Flanagan v. Aaron Cmty. Health Servs. Ctr.,* 876 F.2d 1231, 1234–35 (5th Cir. 1989) (finding Title VII liability under agency principles when the supervisory employees were the administrators of the company and had *unfettered* control over the company's operations). In the sufficiently analogous context of harassment, the Supreme Court held that vicarious liability may exist "only when the employer has empowered the employee to take tangible employment actions against the victim . . . ." *Vance v. Ball State Univ.,* 133 S. Ct. 2434, 2443 (2013).[8]

We conclude that Sage is not vicariously liable because the record does not create a fact issue suggesting that Campanian was an agent with regard to Brandon's employment status. Campanian did not have the authority to

---

[8] *Canutillo Indep. Sch. Dist. v. Leija,* 101 F.3d 393, 401–02 (5th Cir. 1996) is seemingly in tension with *Vance. Canutillo* held that agency liability may exist when the supervisory employee has significant input into the alleged discriminatory conduct. *Canutillo,* however, is a Title IX case. *Vance,* a Title VII case, rejected the more open-ended approach tying supervisory status "to the ability to exercise significant direction over another's daily work." *Vance,* 133 S. Ct. at 2443 (citations omitted). Instead, the Court held that vicarious liability exists only when the supervisor has the authority to significantly change the employee's employment status, such as hiring, firing, failing to promote, reassigning significant different responsibilities, or making a decision that significantly changes the employee's benefits. *Id.*

hire, fire, or alter Brandon's conditions of employment. *See Long*, 88 F.3d at 307. Brandon's above-cited testimony concedes that Campanian could not make tangible employment decisions without Aversa's authorization. Blake was Brandon's supervisor and Brandon did not report to Campanian in any way. The evidence also indicates that Brandon ultimately answered to Aversa. Had Aversa cut Brandon's pay, she might have a claim against Sage because Aversa was Sage's President and had the authority to hire, fire, and change an employee's terms of employment. Therefore, Brandon's claim on this basis does not survive Sage's Rule 56 challenge.

## CONCLUSION

For the foregoing reasons, Brandon has not made a sufficient showing on her *prima facie* case required to move forward her retaliation claims. We **AFFIRM** the district court's judgment.