# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2018

Lyle W. Cayce
Clerk

No. 17-41115
Summary Calendar

FRANCISCO JAVIER RODRIGUEZ,

Plaintiff-Appellant

v.

BROWNSVILLE INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:16-CV-157

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Francisco Javier Rodriguez ("Rodriguez") appeals the district court's grant of summary judgment in favor of his employer, Brownsville Independent School District ("BISD"), on his claims of sex and disability discrimination, retaliation, and failure to promote. Finding no reversible error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-41115

## I.     FACTUAL AND PROCEDURAL HISTORY

In August of 2012, Rodriguez began working as a teacher at Rivera High School in BISD.  While filling out his employment papers, Rodriguez listed his domestic partner as his emergency contact.  Rodriguez states that he did not tell BISD that he was gay until after he was hired.  In 2013, Rodriguez disclosed that he was disabled and obtained leave benefits under the Family and Medical Leave Act for his medical condition.  Rodriguez explained that during flare-ups of his condition, he needed to take intermittent leave for treatments.  BISD granted his request for accommodations—such as to be placed near a restroom.

On August 14, 2014, Rodriguez had a conversation with Christina Garzoria ("Garzoria"), the school's Career Placement Officer, in which he inquired about teaching upper division classes.  Rodriguez states that Garzoria responded, asking "doesn't your 504 (disability accommodation) require that you be near a restroom?"  Garzoria also informed Rodriguez that the position in question had already been filled.  Rodriguez admitted that he did not apply for the position and that no one prevented him from applying for the position.  The next day, Rodriguez sent an email to a human resources officer complaining that Garzoria's statements constituted discrimination based on his disability and denied him the opportunity to obtain the position.  He states that he never received a response to his email.

Rodriguez had ongoing problems with two female colleagues, Garzoria and a fellow teacher, Michael Ann Rivera ("Rivera").  Rodriguez received two reprimands that stemmed from these personal clashes.  On September 11, 2014, Rivera emailed a complaint about Rodriguez to the principal, Aimee Garza-Limon ("Principal").  In that email, Rivera referenced the meeting that she and Rodriguez had with the Principal at the end of the previous school year

2

when they all agreed to "put anything in the past behind us and move forward as a team within our Education and Training program." Rivera stated that although she had attempted to follow the directives, "Rodriguez is continuing to personally attack me in front of students in an attempt to either humiliate me or cause me harm." More specifically, she stated that a student told her that Rodriguez had asked what work they were doing in Rivera's class, and the student showed Rodriguez the journal he was keeping for Rivera's class. Rodriguez "held up the journal and asked his class if that journal looked like high school work. He then laughed at the work [Rivera] had been giving them in front of the entire class." Rivera stated that she was "furious that Mr. Rodriguez continues to behave in such a manner towards [her]." She further stated that she "no longer feel[s] safe as I have a number of students who were his last year who are among my new students this year. [Her] concern is that he will someone [sic] convince one of them to cause some kind of harm to me, my family or my students." In a separate communication with the Principal, Rivera also reported that Rodriguez had transported a student in his personal vehicle in violation of school policy.

The Principal confirmed with the students and Rodriguez that Rodriguez had made disparaging comments to the students about the work assigned in Rivera's class and that Rodriguez had given a student a ride in his personal vehicle. However, Rodriguez claimed he had permission from the student's parents. The Principal gave Rodriguez a verbal warning and asked him to "refrain from indirectly or directly sharing his opinion about other teachers' instructional practices in front of the students to avoid conflict with faculty members." She reminded him that she had previously given notice to teachers that they were not to transport students in their personal vehicles. She also informed him that he would need proper documentation to be able to transport

students.  Later, during Rodriguez's deposition, he testified that he did not believe this reprimand was based on discrimination.

Approximately two weeks later, on October 1, Rodriguez was involved in a second incident, and this incident resulted in a written reprimand.  Garzoria was questioning students who were in the hall after the tardy bell rang.  Rodriguez "suddenly came out of [his] classroom and raised [his] voice at her demanding that she stop talking to these students.  Then, [he] positioned [himself] in front of her, raised [his] hand at her and directed students to leave the area."  The Principal confirmed these events with the hall monitor, who witnessed the incident.  The Principal wrote a reprimand because Rodriguez had left his classroom unattended and had shown disrespect toward his colleague.  Subsequently, Rodriguez admitted during his deposition that the Principal was justified in writing a reprimand based on this behavior.

On December 22, Rodriguez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against BISD in which he named Garzoria.  Several months later in February of 2015, Rodriguez and Garzoria were driving their cars and nearly collided on a road outside the school.  They accused each other of attempting to cause a collision, and Rodriguez filed a police report alleging that Garzoria had attempted to run him off the road.

At some point, the Principal learned that the Texas Department of Family and Protective Services ("DFPS") had begun investigating Rodriguez based on allegations of abuse or neglect of students.  Rodriguez believes that Garzoria made the complaint to the DFPS.[1]  Rodriguez does not allege that the

---

[1] During her deposition, the Principal testified that she did not know who filed the report with DFPS.  Rodriguez claims an email shows that the Principal knew Garzoria filed the report, and thus, he asserts that she lied.  Rodriguez does not provide a citation to the record for the email.  There is an email from the Principal in which she refers to the investigation and stated that Garzoria's name was included in the report.  Although Garzoria

No. 17-41115

Principal or Assistant Superintendent made these allegations to the DFPS. Ultimately, DFPS concluded that the evidence did not show that the alleged abuse occurred.

The Principal sent an email to Assistant Superintendent Carlos Guerra ("Assistant Superintendent") requesting that Rodriguez be transferred or placed on administrative leave because the situation had escalated such that it had become a safety issue and was affecting the campus climate. The Assistant Superintendent testified that he moved both Garzoria and Rodriguez to different schools because there was a personality conflict. He further stated he moved both of them to other schools within BISD because he did not want to be perceived as "favoring anyone over the other." The transfers occurred without interruptions to their service or adjustment to their pay rate.

On June 29, 2016, Rodriguez filed a complaint in federal district court against BISD, alleging BISD discriminated against him based on his age, sex, and disability by not promoting him and by transferring him to another school. The complaint also alleged that BISD retaliated against him for filing complaints. BISD filed a motion for summary judgment, which the district court granted. Rodriguez now appeals.

II.    STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standards as the district court. *Am. Home Assurance Co. v. United Space Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine

---

may have filed the report with DFPS, we do not read the email as indicating that the Principal had actual knowledge that Garzoria filed the report.

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also* FED. R. CIV. P. 56(a).

### III.    ANALYSIS

#### A. Retaliation Claims

Rodriguez appeals the district court's grant of summary judgment in favor of BISD on his retaliation claims.  Title VII prohibits an employer from taking an adverse employment action against an employee because he has filed an employment discrimination charge.  *See* 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).  Rodriguez contends that BISD unlawfully retaliated against him in response to his filing a complaint, and argues that BISD's decision to transfer him and deny him a promotion shows retaliation.

To establish a prima facie case of retaliation under Title VII, a plaintiff "must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007).  Pursuant to the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), "[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted).

An employee establishes pretext by showing that the adverse action would not have occurred but for the employer's retaliatory reason for the action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  In

No. 17-41115

order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

Rodriguez asserts that he participated in protected activity when he filed internal complaints with BISD and an EEOC charge. The district court concluded that Rodriguez did not offer any evidence that BISD was aware of the EEOC charge at the time of the alleged retaliatory acts. Rodriguez does not point to any evidence on appeal showing that BISD was aware of the EEOC charge at the relevant time. Thus, Rodriguez fails to establish a prima facie case of retaliation with respect to the EEOC charge.

With respect to the internal complaints, the evidence shows that the decision makers at BISD were aware of those complaints. Rodriguez contends that BISD's failure to promote him to an upper level teaching position was an adverse employment action. However, an employee's failure to apply for a promotion will bar a failure-to-promote claim unless there is a showing that such an application would have been a futile gesture. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406 (5th Cir. 1999). To show applying would have been futile "usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Id.* Here, Rodriguez did not apply for the promotion. Moreover, he has failed to show that BISD had a "known and consistently enforced policy of discrimination" that would have deterred him from applying. *Id.* Accordingly, he has failed to establish that the failure to promote him was an adverse employment action. Thus, he has not established a prima facie case of retaliation with respect to his failure to promote claim.

No. 17-41115

Rodriguez also argues that BISD retaliated against him by transferring him to a different position. He contends that the transfer was an adverse employment action because it was a less prestigious position, and the students were more difficult at the new school. We will assume *arguendo* that Rodriguez could establish a prima facie case of retaliation based on the transfer. However, he has not shown a conflict in substantial evidence with respect to whether BISD would not have transferred him but for his filing a complaint. *Long v. Eastfield Coll.*, 88 F.3d at 308. The undisputed evidence previously set forth shows that Rodriguez had an extremely contentious relationship with two of his coworkers, Rivera and Garzoria. The Principal issued a verbal reprimand based on his disrespectful conduct toward Rivera and a written reprimand based on his disrespectful conduct toward Garzoria. Rodriguez does not dispute the validity of the two reprimands. During his deposition, Rodriguez admitted that the Principal was justified in issuing the written reprimand and that he did not consider the verbal reprimand to be evidence of discrimination. Moreover, BISD also transferred Rivera. Under these circumstances, Rodriguez has not shown a conflict in substantial evidence that BISD would not have transferred him but for his filing a complaint.

### B. Discrimination Claims

#### 1. Disability Discrimination

Rodriguez argues that BISD discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"). To make a prima facie showing of discrimination, a plaintiff must establish that: (1) he is disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action because of his disability; and (4) he was replaced by a non-disabled employee. *McInnis v. Alamo Comm. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). "Once the plaintiff makes his prima facie showing, the burden

8

then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. The burden then "shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id.*

Rodriguez argues that he was not offered an upper level teaching position because of his disability in violation of the ADA. This is the same position discussed in the analysis of the retaliation claim. Rodriguez asserts that when he called to inquire about the position, he was asked about whether his disability accommodation required him to be near a restroom. It is undisputed that Rodriguez is disabled. However, as previously set forth, Rodriguez admits that he never actually applied for the job. Indeed, at the time that he inquired regarding the position, it had already been filled. Thus, he has failed to show that he was subject to an adverse employment action, and this claim fails.

### 2. Sex Discrimination

Rodriguez next claims that BISD discriminated against him based on his "gender non-conformity or because he was gay." To establish a prima facie case of sex discrimination, a plaintiff must show that he: (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a similarly qualified person who was not a member of his protected group. *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). We will assume arguendo for purposes of this appeal that sexual orientation is a protected class for Title VII claims.[2] Nevertheless, this claim fails because Rodriguez does not show that any decision-maker at BISD

---

[2] "Title VII in plain terms does not cover 'sexual orientation.'" *Brandon v. Sage Corp.,* 808 F.3d 266, 270 n.2 (5th Cir. 2015). As in *Brandon,* we do not now decide whether sexual orientation is a protected class. *Id.*

discriminated against him based on his sexual orientation. The allegations he makes about "anti-gay comments" and accusations that he had inappropriate relationships with the students involve his co-workers—not the Principal, the Assistant Superintendent, or the Superintendent.[3] The Principal and the Assistant Superintendent recommended that Rodriguez be transferred, and the Superintendent was the ultimate decision-maker. Rodriguez has failed to show any discriminatory animus on the part of the decision makers. *Rios v. Rossotti,* 252 F.3d 375, 382 (5th Cir. 2001) (explaining that statements by non-decision-makers fail to satisfy a plaintiff's burden of establishing a prima facie case). This claim is without merit.[4]

IV.   CONCLUSION

For the above reasons, the judgment of the district court is AFFIRMED.

---

[3] In the Statement of Facts section of his brief, Rodriguez claims that the Assistant Superintendent testified that the accusations against him "raised a red flag" because there have been instances of inappropriate relationships between students and teachers across the state. We will assume *arguendo* that the substance of this testimony would be sufficient evidence of discrimination. However, Rodriguez's cite to the deposition in the record does not reveal that testimony. Our precedent is clear that unsupported allegations are insufficient to preclude a motion for summary judgment. *Clark v. America's Fav. Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997). In other words, the lack of evidence does not create a material question of fact to defeat summary judgment.

[4] Rodriguez does not adequately brief a claim of age discrimination, and therefore it is forfeited. *Yohey v. Collins,* 985 F.2d 222, 224–225 (5th Cir. 1993) (citing FED.R.APP.P. 28).