# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2025

Lyle W. Cayce
Clerk

————————

No. 24-40267

————————

FREDDIE FOUNTAIN, *and all others similarly situated*,

*Plaintiff —Appellant*,

*versus*

JOHN RUPERT, *Warden, Coffield Unit*; BRIAN COLLIER, *Executive Director*; JEFFREY RICHARDSON, *Assistant Warden*; MODESTO URBINA, *Food Service Captain*; BENNIE COLEMAN, *Grievance Inv*; BRAD LIVINGSTON, *Ex-Executive Director*,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:15-CV-100

————————————————————————

Before ELROD, *Chief Judge*, ENGELHARDT, *Circuit Judge*, and GUIDRY, *District Judge*.[*]

GREG GERARD GUIDRY, *District Judge*:[**]

————————————————

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[**] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-40267

Plaintiff-Appellant Freddie Fountain, a former Texas prisoner, brought suit against various Texas Department of Criminal Justice employees asserting their collective acts and omissions amounted to torture and caused him serious physical and psychological harm in violation of the Eighth Amendment. The defendants moved for summary judgment on the remaining issues in Fountain's suit. The district court, adopting the report and recommendation of the magistrate judge, and overruling Fountain's objections, granted summary judgment on all issues in favor of the defendants. Fountain timely appealed. After *de novo* review, we find the district court erred in its application of the proper test in evaluating Fountain's Eighth Amendment conditions-of-confinement claims. Otherwise, we find the district court properly granted summary judgment in favor of the defendants on Fountain's claim regarding the indigent mail system. Accordingly, we AFFIRM IN PART, VACATE IN PART, and REMAND the matter to the district court for further proceedings.

I.

In 2015, Fountain filed a *pro se*, *in forma pauperis* (IFP) complaint raising various claims against several Texas Department of Criminal Justice (TDCJ) and University of Texas Medical Branch employees. *Fountain v. United States*, No. 1:15-cv-814 (D. D.C.). After filing several amended and supplemental complaints, the amended complaint filed on January 5, 2017, was designated as the operative pleading in this case. In that complaint, Fountain alleged that beginning in 2011 and continuing until 2017, former Senior Warden John Rupert, Assistant Warden Jeffery Richardson, Food Service Captain Modesto Urbina, Senior Grievance Investigator Bennie Coleman, Doctor Paul Shrode, Practice Manager Pamela Pace, former TDCJ Executive Director Brad Livingston, and TDCJ Executive Director Brian Collier intentionally and maliciously subjected him to cruel and unusual punishment, including numerous health- and life-threatening

2

conditions, while he was incarcerated in administrative segregation at the TDCJ's Coffield Unit. Specifically, he alleged that the defendants: (1) held him in a small, dark, filthy, disease-ridden, insect-infested cell without access to direct sunlight, books or reading materials, a television, running hot water, a desk or other writing surface, room to walk around or exercise, meaningful human contact, or cleaning supplies; (2) subjected him to filthy, disease-ridden, insect-infested shower cells, cell blocks, and runs; (3) deprived him of clean clothing; (4) deprived him of daily showers; (5) subjected him to sleep deprivation; (6) subjected him to either ice cold or boiling hot showers; (7) exposed him to extremely high temperatures in the summer months and low temperatures in the winter months; (8) denied him timely and effective medical care for his serious medical conditions; (9) failed to provide him with clean eating utensils and cups, condiments, and uncontaminated food and drinks; (10) starved him by denying him adequate food and drinks; (11) conspired and trained subordinates to cover up the alleged abuse by falsifying records and destroying evidence; (12) denied him protective shower shoes; and (13) deprived him of his right to freedom of speech and communication with friends and family by restricting his indigent general correspondence supplies and postage. According to Fountain, the defendants' collective acts and omissions amounted to torture and caused him serious physical and psychological harm.

In 2018, the district court entered a final judgment dismissing Fountain's claims with prejudice as frivolous and for failure to state a claim upon which relief may be granted. This court affirmed the district court's judgment in part and vacated and remanded in part. *Fountain v. Rupert*, 819 F. App'x 215, 220 (5th Cir. 2020).

In 2021, the defendants, Rupert, Richardson, Coleman, Urbina, Livingston, and Collier, filed a motion for summary judgment on

Fountain's remaining claims. After this court's earlier opinion, the remaining claims addressed: (1) excessive hot and cold temperatures; (2) extreme shower-water temperatures and violations of his right to basic hygiene; (3) sleep deprivation and excessive noise; (4) inadequate nutrition and attendant weight loss; (5) long-term placement in administrative segregation; (6) unsanitary prison and cell conditions; (7) indigent mail and access to courts; and (8) mental and physical injuries stemming from the totality of his confinement. *See id.* at 218-20. Fountain filed responses in opposition to the defendants' motion for summary judgment.

The magistrate judge analyzed the remaining claims and recommended that the district court grant the defendants' motion for summary judgment. Fountain filed objections to the magistrate judge's report, and the defendants filed a response. The district court overruled Fountain's objections, adopted the magistrate judge's factual findings and recommendations, granted the motion for summary judgment, and dismissed Fountain's § 1983 suit with prejudice. Fountain filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A).

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Brandon v. Sage Corp.*, 808 F.3d 266, 269 (5th Cir. 2015) (citations omitted). A party is entitled to summary judgment if it can demonstrate that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See, e.g.*, *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing such a

summary judgment motion may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).[1]

When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Unsubstantiated assertions are not competent summary judgment evidence. *See Celotex*, 477 U.S. at 324. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise way that evidence supports his or her claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

## A.

Fountain argues in his Amended Brief that the district court erred in granting the defendants' motion for summary judgment on his claims of: (1) extreme shower temperatures; (2) sleep deprivation; (3) inadequate nutrition; (4) extreme facility temperatures; (5) unsanitary conditions; (6) extended placement in administrative segregation; (7) lack of access to legal and other mail; and (8) mental distress.

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and the conditions of a prisoner's confinement are subject to Eighth Amendment scrutiny. *See*

---

[1] Nevertheless, "[o]n summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *see also* 28 U.S.C. § 1746.

*Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981). Although "the Constitution does not mandate comfortable prisons," *id.* at 349, conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347. "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 346 (internal quotation marks and citation omitted).

To make a claim under the Eighth Amendment based on the conditions of his confinement, Fountain had to show that (1) "the conditions were objectively so serious as to deprive [him] of the minimal civilized measure of life's necessities" and (2) subjectively, "the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) (internal quotation marks and citations omitted).

This court recently clarified the objective and subjective components of this test. In *Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024) (emphasis in original), the court addressed an Eighth Amendment claim of sleep deprivation, explaining that "to satisfy the objective component, a prisoner need only show a *substantial risk* of serious harm—not actual harm." The court found the district court had erred in assessing the objective component because it relied upon Garrett's failure to show that such sleep deprivation actually caused his medical issues rather than determining whether the conditions presented a substantial risk of serious harm. *Id.*

As to the subjective component, *Garrett* clarified "that a prison's penological purpose has no bearing on whether an inmate has shown

'deliberate indifference' for purposes of an Eighth Amendment claim." *Id.* Accordingly, the district court erred in addressing the subjective component of Garrett's sleep deprivation claim by finding that the defendants had legitimate penological purposes for establishing the prison sleep schedule. *Id.* This court emphasized that, "[a]s the Supreme Court explained in *Johnson v. California*, [543 U.S. 499 (2005),] the penological-purpose test does not apply in the Eighth Amendment context." *Garrett*, 96 F.4th at 901; *see Johnson*, 543 U.S. at 511 (explaining inapplicability of the penological-purpose test for Eighth Amendment claims).

Here, though the district court engaged in an exhaustive review of the record, it did not have the benefit of the court's ruling in *Garrett*, which clarified both the objective and subjective components of evaluating an Eighth Amendment conditions-of-confinement claim.[2] The district court thus improperly applied the objective component, i.e., whether the plaintiff has shown a *substantial risk* of serious harm, by focusing instead on whether the defendants' actions or policies caused any *actual* harm. And it did not apply the subjective component, as elucidated in *Garrett*, with regard to sleep deprivation claims. We will briefly review the district court's reasoning in light of *Garrett*.

### a. Extreme shower temperatures and basic hygiene

Fountain argues the defendants Rupert, Richardson, and Coleman conspired to implement and conceal policies that deprived him of basic hygiene, including extreme hot and cold water-temperatures in the showers. He contends these temperatures resulted in physical injuries such as burns and fungal infections.

---

[2] *Garrett* predated the district court's ruling by a matter of months.

The district court found that Fountain's "unsubstantiated assertions concerning water temperatures do not defeat Defendants' motion for summary judgment." It specifically noted twice that he "provides no evidence illustrating that water temperature from the shower caused his various burns" and that he "has not shown that the shower water caused his burns."

As explained in *Garrett*, the focus of the objective component should be on whether there is a substantial risk of serious harm, not on whether the defendants' actions or policies caused any harm. *See Garrett*, 96 F.4th at 900. The district court erred by addressing whether there was a causal link between the defendants' actions regarding shower water temperatures and any injuries incurred by Fountain. *See id.*

### b. Sleep deprivation

Fountain contends that defendants Rupert and Richardson were aware that Fountain experienced sleep deprivation from, *inter alia*, excessive noise levels and the delivery of mail, food, and other supplies to prisoners. He states that, at most, he only slept for two to four hours each night.

The district court determined that summary judgment on this claim was proper because "Fountain failed to demonstrate that any named Defendant violated his rights by purposely depriving him of sleep." It specifically noted that "Fountain's outline of the hourly schedule of identification checks, counts, laundry pick-up, and the like further bolster the argument that any disruptions to his sleep stem from prison operations, which are related to a legitimate penological goal."

However, the subjective component analysis for an Eighth Amendment claim does not include a "penological-purpose test." *Garrett*,

96 F.4th at 901. Here, the district court erred by applying such a test to Fountain's sleep deprivation claim. *See id.*

### c. Inadequate nutrition

Fountain argues the defendants Rupert, Richardson, Coleman, and Urbina knew that they were required to provide Fountain with adequate nutrition, but his daily volume of food routinely fell below established nutritional requirements. He urges that inadequate nutrition contributed to his "chronic bad health and low body weight" and negatively impacted his physical mobility.

The district court determined that summary judgment in favor of the defendants was proper as to this claim. It explained, *inter alia*, that "Fountain has not shown that his weight loss was caused by lack of nutrition rather than a medical condition" and that he "fails to show that any weight loss was caused by lack of calories/nutrition or by Defendants."

However, the focus of the objective component should be on whether there is a substantial risk of serious harm, not on whether the defendants' actions or policies caused any harm. *See Garrett*, 96 F.4th at 900. The district court erred by addressing whether there was a causal link between the defendants' actions and policies in providing food to Fountain and his health issues. *See id.*

### d. Extreme facility temperatures – hot and cold

Fountain asserts the defendants Rupert, Richardson, and Coleman conspired to subject him and all other inmates in administrative segregation to extremely hot and cold temperatures. He contends any remedial measures, such as cool-down showers, were either not provided or inadequate to address the dangers associated with extreme temperatures. Furthermore, Fountain avers the defendants refused his requests for

additional remedial measures, such as being taken out of his extremely hot cell.

In granting summary judgment, the district court found, *inter alia*, that "Fountain's claim [that] the 'sudden internal and external temperature change from one extreme to another caused' him to go into shock constitutes a self-diagnosis not supported by the competent summary judgment evidence." The district court also observed that the medical records did not support Fountain's contentions that he suffered from heat-related illnesses and lesions.

Again, the focus should have been on whether there was a substantial risk of serious harm, not on whether the defendants' actions or policies caused any harm. *See Garrett*, 96 F.4th at 900. The district court erred by relying, at least in part, on Fountain's failure to provide medical records demonstrating that extreme temperatures had caused any medical issues or injuries. *See id.*

### e. Unsanitary conditions

Fountain asserts he suffered unsanitary conditions while in administrative segregation, including pest infestations, filthy cells, and a lack of access to cleaning supplies. He contends these conditions resulted in conditions such as bacterial infections, ringworm, and scabies.

The district court granted the defendants summary judgment on these claims, explaining that "the Constitution does not afford protection against mere discomfort, annoyance, and inconvenience." The district court specifically noted that "Fountain wholly fails to connect the alleged filthy and infested cells with an injury."

Under the objective component analysis, the focus should be on whether there is a substantial risk of serious harm, not on whether the

No. 24-40267

defendants' actions or policies actually caused any harm. *See Garrett*, 96 F.4th at 900. The district court erred by addressing whether there was a causal link between unsanitary conditions and any of Fountain's injuries and medical issues. *See id.*

Because the district court did not apply the objective and subjective components as clarified in *Garrett*, we will vacate the district court's grant of summary judgment on the conditions-of-confinement claims and remand the matter for further proceedings.[3]

B.

In this court, Fountain repeats the allegations he made in the district court regarding the indigent mail system. Fountain asserted the defendants curtailed his speech with his daughters from 2013 to 2017 by implementing TDCJ Policy BP-03.91, which restricted supplies to only five, one-ounce letters per month rather than per week. He also claims that he was unable to mail them drawings, which harmed their relationship because they "assume[d] that their father (Fountain) does not care about them." Fountain contended that BP-03.91 violates *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978). He further complains that the paucity of mail resulted in depression and suicide amongst the inmates.

In dismissing his claims, the district court first noted that the constitutionality of BP-03.91 had been upheld in *Dunham v. Wainwright*, No. 1:15-cv-1018, 2017 WL 571515, at *4 (W.D. Tex. Feb. 13, 2017) (which found the policy satisfied the factors under *Turner v. Safley*, 482 U.S. 78 (1987)—

---

[3] Because the district court's discussion and analysis of the issues of mental distress, improper extended placement in administrative segregation, and qualified immunity involved the alleged Eighth Amendment conditions-of-confinement claims, we will also vacate the district court's grant of summary judgment on those issues. The district court should revisit those issues after applying *Garrett*.

as it serves "the legitimate penological interests of controlling costs and hindering trafficking and trading").[4] The district court went on to find that Fountain's reliance on *Guajardo* was misplaced. That case concerned a settlement agreement and a previous TDCJ policy in which prisoner mail was read by prison officials and could be numerically restricted to a list of ten recipients who had to be approved. *Guajardo*, 580 F.2d at 753, 756-57. The district court observed that BP-03.91 does not numerically limit the persons to whom prisoners may send mail. Contrary to Fountain's contentions, the district court found, *Guajardo* does not mandate that TDCJ must permit prisoners to send five letters per week. The district court further found that preventing inmates from sending drawings, that is, rejecting them as artwork, was related to security and maintaining order by preventing gang members from sending coded messages and inmates from profiting.

Fountain has failed to show any error in the district court's dismissal of his claims regarding inmate mail. The district court applied the proper standard articulated in *Turner* before finding them meritless. And, upon *de novo* review, we agree that Fountain has not shown the existence of a genuine dispute of a material fact.

## III.

For the foregoing reasons, we find the district court's judgment should be vacated in part because the court did not have the benefit of our most recent ruling in *Garrett* regarding the objective and subjective

---

[4] In *Turner*, the Supreme Court articulated four factors relevant in determining whether a prison regulation like BP-03.91, affecting a constitutional right while incarcerated, withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means remain open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89-91.

standards applicable to Eighth Amendment conditions-of-confinement claims. Accordingly, we vacate the district court's judgment on all issues save for the claim regarding inmate mail, for which summary judgment is affirmed. After *de novo* review, we AFFIRM IN PART, VACATE IN PART, and REMAND for further proceedings.